PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

JUAN SANTANA,

       Plaintiff,

  -v-                                                 20-CV-0246-LJV
                                                       ORDER
SERGEANT DUFEE,[1] et al.,

       Defendants.
───────────────────────────────────

## **INTRODUCTION**

The *pro se* plaintiff, Juan Santana, was a prisoner confined at the Orleans Correctional Facility ("Orleans") when he filed this action. He asserts claims under 42 U.S.C. § 1983 and alleges that the defendants violated his Eighth and Fourteenth Amendment rights. Docket Item 1. He also has moved to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it). Docket Item 2.

Because the plaintiff meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required certification, Docket Item 2 at 2, and authorization, Docket Item 1 at 21, the Court grants his motion to proceed *in forma pauperis*. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint. For the reasons that follow, one of the plaintiff's claims may proceed, but the remaining

---

[1] Santana alternates between two spellings: "Dufee" and "Duffee." *See* Docket Item 1. For the sake of consistency, the Court will refer to this defendant as "Dufee."

claims will be dismissed under sections 1915(e)(2)(B) and 1915A unless he files an amended complaint correcting the deficiencies addressed below.

**DISCUSSION**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))). But leave to amend pleadings may be denied when any amendment would be "futile." *Id.*

**I.     SCREENING THE COMPLAINT**

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d

Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

Santana has sued six New York State Department of Corrections and Community Supervision ("DOCCS") officials employed at the Wyoming Correctional Facility ("Wyoming") for using excessive force against him, in violation of his Eighth Amendment rights, and for denying him due process of law, in violation of his Fourteenth Amendment rights.[2] *See* Docket Item 1 at 1-2. More specifically, he has

---

[2] Liberally construed, the complaint also might raise claims for denial of adequate medical care, in violation of the Eighth Amendment. A claim of inadequate medical care rises to the level of a constitutional violation only when a defendant, operating under color of law, was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To the extent Santana seeks to bring such a claim, he must amend the complaint, if possible, to include factual allegations showing (1) that he suffered from "[a] serious medical condition"—that is, a condition "where the failure to treat . . . could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that Wyoming officials both knew of and "disregard[ed] that risk by failing to take reasonable measures to abate it," *see Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (citations omitted)*.*

If Santana amends his complaint to attempt to state such a claim, he also must allege which defendants knowingly disregarded his medical issues, or name those

sued "Sergeant Dufee" and "John Doe Prisoner Guards" Nos. 1-4 for using excessive force and "Hearing Officer Heary" for denying him due process of law. A liberal reading of the complaint tells the following story.

On April 11, 2018, Santana underwent a circumcision at the Attica Correctional Facility, after which he was transferred to Wyoming. *Id.* at 3. Santana asked to be housed in the infirmary. *Id.* That request was denied, but medical staff gave Santana gauze pads, topical cream, and aspirin. *Id.* at 4.

On April 13, 2018, Santana sought additional time off programs because the incision was not healed. *Id.* "The nurse who ha[d] authority to provide medical leave programs denied his request," and Santana "was forced to work and attend programs in spite of [his] medical condition or face disciplinary sanctions." *Id.* On April 15, 2018, a Wyoming infirmary doctor determined that Santana's incision "was not healing correctly" and told Santana to visit the infirmary every 48 hours. *Id.* Despite this recommendation, "[i]t would be weeks" before Santana saw that doctor again. *Id.*

On April 27, 2018, the same infirmary doctor removed Santana's stitches. *Id.* at 5. The affected area began to hurt, swell, and bleed. *Id.* From April 27, 2018, through May 10, 2018, Santana sought treatment during sick call twice a week. *Id.* No nurse

---

officials who did so as additional defendants, and explain exactly what each defendant did or did not do in causing the claimed injuries. More specifically, in the "Prisoner Complaint Form," Santana should name any additional officials he wishes to sue in the "Caption of Action" (page one) and the "Parties to This Action: Defendant's Information Note" (page two), and Santana should include the factual details in the "Statement of Claim" section (pages four to six). If Santana does not know the names of the officials allegedly responsible for denying him adequate medical care, he may name them as additional John or Jane Does, but he should provide enough information—*e.g.*, position or job title, shift and location worked, physical description, etc.—to enable DOCCS to identify them. *See Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam).

would provide Santana with a topical cream, but a doctor did provide "small amounts." *Id.* Santana "continually [ran] out" of the cream. *Id.* Because the bathroom was "used by 60 men and an unsanitary place to apply [the] ointment," Santana "was forced to apply the topical cream to the affected area in his sleeping quarters of his cubical, which is four-foot-tall with very little privacy." *Id.*

On May 10, 2018, Santana moved his "large locker to obstruct the view of the dormitory," so that he would have some privacy to apply the cream. *Id.* A female prison guard making rounds "attempt[ed] to sneak up" on Santana, "probably because she [saw] his large locker facing outside his cube and thought something suspicious was going on." *Id.* When she saw him applying cream to his penis, she was "caught off guard [and] began to bark direct orders for him to pull up his pants." *Id.* at 6. Santana complied, and the prison guard immediately ran to her desk; "in a panic state," she called for help. *Id.*

Defendants Dufee and John Does Nos. 1-4 "rushed" into Santana's dorm, and the female prison guard accused Santana of lewd conduct. *Id.* Santana, who is "of Spanish descent with a modicum of English speaking abilities," attempted to explain the circumstances. *Id.* The following then occurred:

> Prison guards pounced on [Santana], slammed him to the ground face first, handcuffed him and literally dragged him to special housing unit (hereinafter "SHU"). While in SHU still handcuffed Sergeant Dufee and 4 other prison guards brutally choked and punched him, kicked [him and], kick[-]stomped on him, [paying] special attention to his groin area. While he was down on the floor, prison guards maintained chokehold, while other guards spit on him and Sergeant Dufee kicking him fervidly in his groin area. [Santana's] groin was already affected immediately burst open puss and began to bleed profusely.

*Id.* at 6-7. As a result, "a huge cyst like bulge [began] to grow on [Santana's] penis," and he now experiences "continuous pain while he urinates, and . . . [he] suffers from erectile dysfunction that seems permanent." *Id.* at 7.

On May 11, 2018, "CO Bartolotta, S A," issued a misbehavior report against Santana. *Id.* at 16, 18. On May 16, 2018, defendant Heary conducted a Tier III disciplinary hearing on the charges of refusing a direct order and lewd conduct. *Id.* at 7, 18. During the hearing, Santana called as witnesses medical staff "who testified to the fact that [Santana] did have a serious medical personnel [*sic*] to apply topical cream to that area." *Id.* at 7. Santana also testified through an interpreter that he did not engage in lewd conduct. *Id.*

Heary "solely relied" on the misbehavior report and found Santana guilty of refusing a direct order and engaging in lewd conduct. *Id.* at 18. Heary sanctioned Santana to 45 days in the SHU, 45 days loss of all privileges, and three months recommended loss of good time. *Id.* at 7, 18. Santana appealed, and, on August 2, 2018, the DOCCS Commissioner reversed Heary's decision. *Id.* at 8, 20.

Santana seeks $10,000,000 in damages. *Id.* at 13-14.

## II.     SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the

6

deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A. Excessive Force (Eighth Amendment) Claims

Santana alleges that Dufee and John Does #1-4 used excessive force against him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. "[T]he core judicial inquiry [for such a claim] is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). This inquiry includes both subjective and objective components. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994).

> The objective component considers the "seriousness of the injury." *Id.* Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."

*Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.* In deciding whether force was applied to maintain discipline or simply to cause harm, the Court also looks at the subjective component: whether the defendant possessed a "wanton" state of mind while engaging in the use of force.

> In determining whether the use of force was wanton or unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Id.* at 6-7 (citation omitted). Thus, while the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force," a plaintiff who was not

7

seriously injured still may state a cognizable Eighth Amendment claim if "the use of force is . . . of a sort repugnant to the conscience of mankind." *Id.* at 9-10.

Here, Santana alleges that prior to the alleged assault, he "attempted to explain himself and clear up the whole misunderstanding by showing Sergeant Dufee that it was topical cream he was applying." Docket Item 1 at 6. But Dufee and John Does Nos. 1-4 "were there to hurt him" and promptly "pounced on him, slammed him to the ground face first, handcuffed him and literally dragged him to [the SHU]." *Id.* At the SHU and while Santana still was handcuffed, the defendants "brutally choked and punched [Santana], kicked [him and], kick[-]stomped on him, [paying] special attention to his groin area." *Id.* While Santana was on the floor, the defendants "maintained chokehold, while other guards spit on him and Sergeant Dufee kicking him fervidly in his groin area . . . [until it] burst open puss and began to bleed profusely." *Id.* at 6-7. Santana further alleges that "while he was having a medical crisis," the defendants paid specific attention to and intentionally kicked him in his groin. *Id.* at 12. Those allegations, taken as true, are sufficient to state a viable excessive-force claim.

### B. Due Process (Fourteenth Amendment) Claim

Santana also alleges that defendant Heary denied him due process of law during his disciplinary hearing. To state a due process claim with respect to a prison disciplinary hearing, an inmate-plaintiff must allege that (1) "the confinement or restraint complained of create[d] an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); and (2) "the state ha[d] granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from

that confinement or restraint," *id.* (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)). The inmate then must show that in imposing the confinement or restraint, the defendant denied the inmate some aspect of the process he was due, namely "[i] advance written notice of the charges; [ii] a fair and impartial hearing officer; [iii] a reasonable opportunity to call witnesses and present documentary evidence; [or iv] a written statement of the disposition, including supporting facts and reasons for the action taken," *see Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted); *see also id.* at 488 ("[T]he requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board . . . ." (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985))).

Here, Santana asserts that Heary "sought to suppress evidence and covered for her co-workers actions and deprived [Santana] of his day at hearing." Docket Item 1 at 11. He further asserts that "even a brief investigation would of [sic] shown he was clearly under medical self care and only applying topical cream to the affected area." *Id.* at 7, 10.

Even assuming that Santana might succeed in showing that he was denied an impartial hearing officer or that Heary's decision was not supported by "some evidence," Santana has failed to allege that the discipline Heary imposed—45 days in the SHU[3]—constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *see Cruz*, 202 F.3d at 597 (citation omitted). To be sure, the Second

---

[3] The Court assumes that the other sanction—loss of three months of good time, *see* Docket Item 1 at 7, 18—was vacated when the DOCCS Commissioner reversed Heary's decision. If that is not the case, Santana also may include that information in his amended Fourteenth Amendment claim.

9

Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004) (emphasis added). But it also has explained that "SHU confinements of fewer than 101 days" generally can meet this threshold only "if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id.* Because Santana has not alleged that his 45-day confinement in the SHU involved uniquely severe conditions, his claim for denial of due process is subject to dismissal.

Nevertheless, and in light of Santana's *pro se* status, *see generally Cuoco*, 222 F.3d at 112, the Court will permit him to amend his complaint, if possible, to include specific factual allegations showing that the "conditions of his [disciplinary] confinement . . . were dramatically different from the basic conditions of [his] indeterminate sentence," *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

### C. John Doe Defendants

With respect to the excessive force claim asserted against John Does Nos. 1-4, and pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), DOCCS shall ascertain the full names of John Does Nos. 1-4. DOCCS also shall provide an address where these defendants may be served. DOCCS need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which Santana may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

DOCCS shall produce the information specified above regarding the identities of John Does Nos. 1-4 **within 35 days of the date of this order**. The information shall be forwarded to the Court's *Pro se* Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614. Once this information is provided, Santana's complaint shall be deemed amended to reflect the names of the defendants in place of John Does Nos. 1-4, and the United States Marshals Service shall effect service.

## **CONCLUSION**

Because Santana meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required documents, the Court grants his request to proceed *in forma pauperis*. But any claims other than his for excessive force will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint **within 45 days of the date of this order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Santana's claim for excessive use of force may proceed.

Santana is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

11

# **ORDER**

In light of the above,

IT IS HEREBY ORDERED that Santana's motion to proceed *in forma pauperis*, Docket Item 2, is GRANTED; and it is further

ORDERED that Santana may amend his claim for denial of due process, as well as any claim for denial of medical care, **within 45 days of the date of this order;** and it is further

ORDERED that the Clerk of the Court shall send to Santana with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Santana does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, any claim other than his claim for excessive use of force will be dismissed without further order and the Clerk of Court shall terminate Heary as a defendant in this action; and it is further

ORDERED that DOCCS shall provide the Court with the names and addresses of John Does Nos. 1-4—or a statement of written reasons why such identification is improper or impossible—**within 35 days of the date of this order**; and it is further

ORDERED that DOCCS's failure to comply with this order may result in sanctions under Rule 37 of the Federal Rules of Civil Procedure; and it is further

ORDERED that if Santana does not file an amended complaint **within 45 days of the date of this order**, the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, complaint, and this order upon defendants Dufee and John Does Nos. 1-4 (once identified), without the plaintiff's payment therefor,

unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED the Clerk of Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and it is further

ORDERED, under 42 U.S.C. § 1997e(g), that once served, the defendants shall answer the complaint; and it is further

ORDERED that Santana shall notify the Court in writing if his address changes. The Court may dismiss the action if Santana fails to do so.

SO ORDERED.

Dated:     April 8, 2020
           Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE