UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUAN SANTANA,

        Plaintiff,

v.

SERGEANT DURFEE, *et al.*,

        Defendants.

20-CV-246-LJV
DECISION & ORDER

---

On February 25, 2020, the *pro se* plaintiff, Juan Santana, filed a complaint raising claims under 42 U.S.C. § 1983 and alleging that the defendants violated his Eighth and Fourteenth Amendment rights. Docket Item 1. This Court granted Santana permission to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it) and to amend his complaint. Docket Item 3. Santana amended his complaint twice, Docket Items 5 and 23, and this Court screened both amended complaints under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), *see* Docket Items 8 and 25. After screening, this Court allowed Santana's claims for excessive use of force (against Sergeant Durfee) and for denial of adequate medical care (against Jun Young, Susan Hartwig, Diane Ives, and Katherine Gugino) to proceed to service, but it dismissed Santana's official-capacity claims for money damages against all defendants.[1] Docket Item 25.

---

[1] This Court also found that Santana's claims against Anthony J. Annucci, Thomas Sticht, and Correction Officer Bartolotta would be dismissed unless Santana filed a third amended complaint pleading viable claims against those defendants. Docket Item 25. Santana did not amend his complaint a third time. Accordingly, those claims were dismissed without further order. *See id.* at 8.

On June 25, 2021, the defendants moved to dismiss Santana's claim for denial of adequate medical care, arguing that it failed to state a claim upon which relief may be granted.[2]  Docket Item 39.  When Santana did not timely respond to that motion, this Court ordered him to show cause why the Court should not decide the motion to dismiss based on only the defendants' submissions.  Docket Item 42.  But Santana again did not respond, and so the Court now resolves the motion without Santana's input.  Nevertheless, the Court denies the defendants' motion to dismiss.

## FACTUAL ALLEGATIONS

On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In light of this standard, the second amended complaint tells the following story about a medical procedure Santana underwent while in custody.[3]

---

[2] The defendants also moved to dismiss all official-capacity claims for damages against them.  *See* Docket Item 39-1 at 6.  But as explained above, this Court previously dismissed those claims in its January 26, 2021 screening order.  *See* Docket Item 25 at 2-3, 8.  Therefore, the Court denies the defendants' motion to dismiss all official-capacity claims for damages as moot.

[3] The Court limits its discussion of the underlying facts to those pertinent to Santana's claim about the denial of adequate medical care.  For a full recitation of the facts, the Court refers the reader to its initial screening order, *see* Docket Item 3 at 2-6; the first amended complaint, Docket Item 5; and the second amended complaint, Docket Item 23.  In its January 26, 2021 screening order of the second amended complaint, this Court noted that "[t]he second amended complaint alleges the same facts as the first amended complaint."  Docket Item 25 at 2 n.2.  Although the facts alleged in the first amended complaint and the second amended complaint are largely the same, the first amended complaint provides more detail about Santana's medical procedure and recovery and the events giving rise to his excessive force claim.  *Compare* Docket Item 23, *with* Docket Item 5.  This Court previously warned Santana that "an amended complaint is intended to **completely replace** the prior complaint."

Santana was a prisoner confined at the Wyoming Correctional Facility ("Wyoming"). Docket Item 23 at 2. On April 9, 2018, the Wyoming medical-unit physician referred Santana to an outside hospital for a circumcision. *Id.* On April 11, 2018, Santana underwent a circumcision and was discharged to the Attica Correctional Facility infirmary. *Id.*

When Santana was told that he was being transferred back to Wyoming the next day, he objected to the transfer. *Id.* He "explained that he [was not] well yet," and he asked to remain at the infirmary for at least two more days. *Id.* But on the morning of April 13, 2018, a nurse told Santana that it would be his last day in medical therapy and that he would have to return to "attend[ing] . . . program[s]." *Id.*

Santana sought additional time off from attending programs, but the "supervising nurse who had the authority to" provide additional medical leave "rebuffed his request." *Id.* And so on April 14, 2018, Santana was "sent back and forced to attend program[s] despite his medical condition or face a disciplinary report." *Id.*

On April 15, 2018, Santana saw a Wyoming infirmary doctor. *Id.* That doctor told Santana that the incision "was not healing correctly," Docket Item 5 at ¶ 21, and instructed him to "report to the infirmary every [forty]-eight (48) hours to have medical staff monitor his condition," Docket Item 23 at 2. But "medical staff neglected [his condition] for more than a week," the "incision was not healing," and Santana

---

Docket Item 3 at 11 (emphasis in original). Nevertheless, because Santana is proceeding *pro se*, this Court construes his second amended complaint to include the allegations detailed his first amended complaint, *see* Docket Item 5, as well. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they could suggest.'" (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"developed a severe infection." *Id.* at 2-3.  By April 21, 2018, that infection became "irritated and highly painful."  *Id.* at 3.  And despite the doctor's recommendation that he be monitored every forty-eight hours, Santana would not see that doctor again until April 27, 2018.  *See* Docket Item 5 at ¶ 24.

On April 27, 2018, the doctor removed Santana's stiches.  *Id.*  The affected area "began to bleed night and day," and the swelling caused the "incision to separate and . . . [a] reddish pus[] . . . to outflow from [the] affected area."  *Id.*  From April 27, 2018, through May 10, 2018, Santana sought treatment for his injury at sick call twice a week, but he was given only a topical cream for treatment.  Docket Item 23 at 3.  Because Santana was housed in a dorm with sixty other inmates and the bathroom was unsanitary, Santana would apply the ointment in his "cubical dorm" for reasons of both privacy and cleanliness.  *Id.*; *see also* Docket Item 5 at ¶ 26.

On May 10, 2018, Santana "hid behind a large locker to conceal himself and . . . apply [the] medicated ointment."  Docket Item 23 at 3.  A female guard was making rounds and "noticed the locker had been moved."  *Id.*  When "she came behind [the locker]" and "observed [Santana] applying [the] ointment," she screamed and called for assistance.  *Id.*  Durfee and three other officers assaulted Santana, and the "injury in his genital area rupture[d] causing continuous pain and bleeding."  *Id.*  But he was denied emergency medical care until the next day, May 11, 2018.  *Id.*

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

4

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion [to dismiss], the sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law."  *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  For that reason, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  *Id.* at 323.

## DISCUSSION

Defendants Young, Hartwig, Ives, and Gugino have moved to dismiss Santana's claims that they provided inadequate medical care in violation of the Eighth Amendment.

"To establish an Eighth Amendment violation based on the alleged inadequacy of prison medical treatment or the withholding of essential health care, [a] plaintiff must prove that the defendants' actions or omissions amounted to 'deliberate indifference to a serious medical need.'"  *Ross v. Kelly*, 784 F. Supp. 35, 43 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"

5

*Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Estelle*, 429 U.S. at 106 & n.14). Nor does "mere disagreement over the proper treatment . . . create a constitutional claim." *Chance*, 143 F.3d at 703. Nevertheless, "certain instances of medical malpractice may rise to the level of deliberate indifference," such as "when the malpractice involves culpable recklessness, i.e., an act or failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Hathaway*, 99 F.3d at 553 (citation omitted). For example, allegations that "[p]rison officials . . . deliberately def[ied] the express instructions of a prisoner's doctors," or that they "deliberately interfered with [a prisoner's] medically prescribed treatment solely for the purpose of causing him unnecessary pain," are sufficient to state a "colorable constitutional claim of deliberate indifference." *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

The defendants argue that Santana's inadequate medical care claims must be dismissed because he does not allege a "sufficiently serious" medical condition. Docket Item 39-1 at 5. This Court disagrees.

The defendants assert that Santana's injuries were "*de minimis*"; "[s]urely," they say, "some pain post-surgery is inevitable." *Id.* But on a motion to dismiss, this Court

6

must accept Santana's allegations as true. And those allegations suggest injuries that were far worse than the defendants acknowledge.

Santana has alleged that his post-surgery condition was so severe that a Wyoming infirmary doctor "told [him] to report to the infirmary every [forty]-eight (48) hours to have medical staff monitor his condition." Docket Item 23 at 2. Santana did not receive that level of care, however, and as a result, the incision did not heal properly and he developed "a severe infection." *Id.* at 2-3. In fact, the infection "became irritated and highly painful" due to the defendants' failure to provide medical care. *Id.* at 3. And later, after the alleged May 10th assault, the infected area ruptured, causing "continuous pain and bleeding," but Santana did not receive medical assistance until the following day. *Id.*

Although some pain may be expected post-surgery, Santana's allegations of a "highly painful" and "severe infection" exceed what might be expected, as do his allegations of a "rupture" resulting in medically unattended "continuous pain and bleeding." *See Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."). It may later become clear that Santana's claims are not adequately supported. But on a motion to dismiss, this Court must accept Santana's allegations as true, and Santana has plausibly alleged that he suffered from a "serious medical condition," *see Harrison*, 219 F.3d at 136.

The defendants argue that Santana's claims must be dismissed for a second reason: because Santana does not allege that the defendants' actions amounted to

"deliberate indifference."  Docket Item 39-1 at 5.  They argue that at most, Santana has pleaded that they acted negligently and that negligence is insufficient to sustain Santana's constitutional claims.  *Id.* at 2.  Again, this Court disagrees.

In arguing that "the [d]efendants cared for and tended to . . . Santana's every need within the bounds of acceptable policy," *id.* at 5, the defendants again ask this Court to overlook Santana's allegations.  Santana has alleged that the Wyoming infirmary doctor instructed him "to report to the infirmary every [forty]-eight (48) hours" for the staff to monitor his condition.  Docket Item 23 at 2.  That advice suggests that such care was necessary and "within the bounds of acceptable policy."  But despite that explicit recommendation, the staff allegedly failed to monitor Santana's post-surgery care for "more than a week," *id.* at 2-3, and that doctor did not see Santana again until at least twelve days later, *see* Docket Item 5 at ¶¶ 21, 24.

Santana does not allege "mere disagreement over the proper treatment," *Chance*, 143 F.3d at 703.  Rather, he alleges that his infection, bleeding, and complaints of pain were ignored and that the medical staff failed to provide the monitoring and treatment that had been explicitly recommended by a physician.  Again, those allegations may or may not be supported by the proof.  But at the pleading stage, they are enough to allege a viable claim.  *Cf. Mora v. Hughes*, 238 F. Supp. 3d 438, 444 (W.D.N.Y. 2017) (concluding that prisoner alleged sufficient facts that a doctor acted with recklessness when he alleged, *inter alia*, that a doctor agreed treatment was necessary, but failed to take the necessary steps to ensure prisoner received treatment).

The defendants' assertion that "[t]here is . . . no documentation of . . . Santana['s] making complaints of pain and . . . being ignored," Docket Item 39-1 at 5, suffers from the same flaw.  Santana alleges that he complained to the medical staff; in fact, he says that from April 27, 2018, through May 10, 2018, he complained twice a week about his infection but received only topical cream.  Docket Item 23 at 3.  Documented or not, those allegations must be accepted as true at this stage.  *See Dansler–Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 581 (W.D.N.Y. 2011) ("Unlike motions for summary judgment, which . . . require the parties to produce supporting evidence in admissible form, analysis of [a] motion [to dismiss] is guided solely by the pleadings and the documents incorporated therein by reference, wherein the truth of plaintiff's allegations is presumed."); *see also Licari v. Semple*, 2018 WL 3974731, at *3 (D. Conn. Aug. 20, 2018) ("A plaintiff is not required to support his complaint with evidence. . . . [I]n deciding a motion to dismiss, the court accepts the truth of the allegations in the complaint and determines whether the allegations state a plausible claim for relief.").  So by arguing that "[t]here is . . . no documentation of . . . complaints," the defendants get ahead of themselves: they ask for evidence, which is not required at the pleading stage.

In sum, because Santana has alleged facts showing that the defendants' actions and omissions amounted to "deliberate indifference to a serious medical need," *see Ross*, 784 F. Supp. at 43, he has alleged facts sufficient to survive a motion to dismiss on his claim of inadequate medical care.

**CONCLUSION**

For the reasons stated above, the moving defendants' motion to dismiss, Docket Item 39, is DENIED.

SO ORDERED.

Dated:   March 7, 2022
         Buffalo, New York

                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE